1

2

3

4

5

6

7

8

9                    **IN THE UNITED STATES DISTRICT COURT**

10                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   MARTHA YANG,                              CASE NO. CV F 04-6548 AWI LJO

13              Plaintiff,              _____ **FINDINGS AND RECOMMENDATIONS ON**
                                                **SOCIAL SECURITY COMPLAINT**
14        vs.                                   (Docs. 11, 12, 15.)

15   JO ANNE B. BARNHART,
     Commissioner of Social Security,

16
                Defendant.
17   _____/

18                              **INTRODUCTION**

19        Plaintiff Martha Yang ("plaintiff") seeks this Court's review of an administrative law judge's

20   ("ALJ's") decision that plaintiff is neither disabled nor entitled to Supplemental Security Income ("SSI")

21   under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d.  Based on review of the

22   Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart,

23   Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to deny plaintiff's

24   request to reverse the Commissioner's denial of SSI or to remand for further proceedings.

25                              **BACKGROUND**

26                      **Plaintiff's Personal Background**

27        Plaintiff is age 50 and of Hmong heritage, understands but does not speak English, and has past

28   relevant work as an assembly line worker in a candy factory.  (AR 18, 75, 102, 314.)

1

**Administrative Proceedings**

2

*Plaintiff's Prior SSI Application*

3      On May 25, 1999, plaintiff filed her prior SSI application (not at issue here) to allege disability

4  since June 15, 1998 due to low back pain, left hand pain, hearing loss, high blood pressure, depression,

5  anxiety and hallucinations. (AR 37-38.)  The Social Security Administration ("SSA") denied plaintiff's

6  claim initially and on reconsideration.  (AR 37.)  Plaintiff filed a request for an ALJ hearing. (AR 37.)

7  After a May 24, 2000 hearing, the ALJ issued his January 25, 2001 decision to conclude that plaintiff

8  lacks an impairment(s) that significantly limits her ability to perform basic work-related activities and

9  is not disabled.  (AR 40.)  On February 11, 2002, the Appeals Council denied plaintiff's request to

10  review the ALJ decision. (AR 17.)  Plaintiff did not file an action to seek judicial review to render res

11  judicata the ALJ's decision that plaintiff was not disabled prior to January 25, 2001.  (AR 17-18.)

12

*Plaintiff's Current SSI Application*

13      On August 31, 2001, plaintiff filed her current SSI application (at issue here) to claim disability

14  since March 10, 1997 due to ulcer, back pain, depression, headaches and sleepiness.  (AR 76.)  With its

15  March 5, 2002 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined that

16  plaintiff's condition is not severe enough to prevent her to work.  (AR 58.)

17      On March 27, 2002, counsel was appointed for plaintiff for her claim at issue here.  (AR 32.)

18  On that same date, plaintiff filed her Request for Reconsideration to claim she is "totally disabled." (AR

19  62.)  With its September 23, 2002 Notice of Reconsideration, SSA denied plaintiff's claim and again

20  determined that plaintiff's condition is not severe enough to prevent her to work.  (AR 64.)

21      On October 9, 2002, plaintiff filed her Request for Hearing by Administrative Law Judge to

22  claim she is "totally disabled." (AR 68.)  After an August 12, 2003 hearing, the ALJ issued his October

23  10, 2003 decision to conclude that plaintiff did not meet her burden to prove inability to perform past

24  relevant work and that plaintiff is not disabled.  (AR 22.)

25      Plaintiff submitted to SSA's Appeals Council her November 6, 2003 Request for Review of

26  Hearing Decision to seek review of the ALJ's decision. (AR 12.)  On September 8, 2004, the Appeals

27  Council denied plaintiff's request for review to render the ALJ's October 10, 2003 decision as the

28  Commissioner's final decision subject to this Court's review.  (AR 5.)

**Medical History And Records Review**[1]

*Kings Winery Medical Clinic*

During 1999-2003, plaintiff received physical and mental health treatment at Kings Winery Medical Clinic.  As for physical problems, plaintiff complained of headache, body, muscle and stomach ache, itchy hand, painful finger, diarrhea, dizziness, arm, shoulder, back, neck, abdominal, lower quadrant and extremities pain, and blood pressure.  (AR 161, 163, 167, 170, 172, 174, 183, 186, 187, 190, 195, 197, 201, 204, 206, 211, 214, 216, 218, 220, 223, 225, 229, 231, 234.)  Plaintiff was assessed with athralgia, peptic ulcer disease, vertigo, chronic pain, allergic rhinitis, lower back pain, myalgia, gastritis, hypertension, controlled, muscle strain, and abdominal pain. (AR 163, 167, 172, 179, 183, 185, 187, 190, 207, 208, 211, 218, 223, 229, 231, 234.)

As for mental problems, plaintiff complained of depression, poor memory and sleep difficulty, including nightmares.  (AR 162, 164, 171, 173, 178, 180, 195, 221, 222.)  Plaintiff was assessed with post-traumatic stress syndrome, anxiety, depression, and insomnia and was generally noted to be alert, oriented and coherent.  (AR 162,164, 169, 171, 173, 175, 178, 179, 180, 183, 185-187, 190, 195, 207, 208, 213, 217, 219, 221, 222, 224, 230, 232, 235.)  Plaintiff was treated with medication, including Paxil 20 and 40 mg, and Trazodone. (AR 162, 164, 169, 171,173, 175, 177, 178, 180, 213, 217, 219, 221, 222, 224, 230, 232, 235.)  Plaintiff was also treated with sleep medication.  (AR 197.)

An April 18, 2002 abdominal ultrasound revealed a generally normal pancreas, liver, gallbladder and bile duct.  (AR 168.)   The ultrasound revealed small mobile echogenic structures within the gallbladder probably related to small cholesterol stone or biliary sludge balls.  (AR 168.)

July 23, 2002 and September 4, 2002 pelvic ultrasounds revealed a 7.5 cm left ovarian cyst.  (AR 233, 236.)

*Steven Stoltz, M.D., Consultative Internist*

Steven Stoltz, M.D. ("Dr. Stoltz"), a board certified internist, conducted a consultative internal medicine evaluation of plaintiff and prepared a January 11, 2002 report.  (AR 129.)  Plaintiff's chief complaints were depression and "a history of chronic aches and pains," including sharp lower back,

---

[1]     The Commissioner stipulates that the ALJ fairly and accurately summarized the medical evidence in his October 10, 2003 decision.

1   diffuse abdominal and bilateral shoulder pain, and chronic headaches. (AR 129.)  Dr. Stoltz' physical

2   examination revealed plaintiff was in no distress and was alert, cooperative and well-oriented.  (AR

3   131.)  Plaintiff "had poor effort during the musculoskeletal testing and motor strength testing."  (AR

4   131.)  The remainder of Dr. Stoltz' examination was unremarkable and revealed that plaintiff's range

5   of motion in upper and lower extremities was within normal limits. (AR 132-133.)  Plaintiff's strength

6   was 5/5 in all extremities.  (AR 133.)  At to plaintiff's gait, Dr. Stoltz observed:

7
    Initially when walking in the exam room the patient had a very odd, almost hesitant type
    of gait that she stated was present due to low back pain.  However, later when I saw her
8   ambulating in the hallway her gait seemed to be normal.  (AR 133.)

9       Dr. Stoltz diagnosed chronic aches and pains, abdominal pain, headaches and probable

10  depression.  (AR 133.)  Dr. Stoltz found "no objective evidence for any significant rheumatological,

11  neurological or musculoskeletal disease pathology" and worried about plaintiff's mental health.  (AR

12  134.)  Dr. Stoltz "would place no particular restrictions on her activities."  (AR 134.)

13                          *Ekram Michiel, M.D., Consultative Psychiatrist*

14      Ekram Michiel, M.D. ("Dr. Michiel"), a board certified psychiatrist, conducted a consultative

15  psychiatric evaluation of plaintiff and prepared a January 26, 2002 report.  (AR 135.)  Dr. Michiel

16  generally observed that plaintiff's posture and gait were normal and that plaintiff exhibited neither

17  involuntary movements, bizarre behavior nor specific mannerisms. (AR 135.)  Plaintiff informed Dr.

18  Michiel that in 1998, her son was kidnaped by a man who pretended to be a police officer and that her

19  son was returned after three hours.  (AR 135.)  Since then, plaintiff has felt sad, gets stressed, is unable

20  to sleep because of nightmares, thinks much, gets confused, and has a poor memory. (AR 135.) Plaintiff

21  gets nervous and scared when the phone rings and feels tired the whole day.  (AR 135.)  For daily living

22  activities, plaintiff noted she is able to cook when she is alone and performs household chores.  (AR

23  136.)  At times, she accompanies her family for shopping and drives when needed.  (AR 136.)  Dr.

24  Michiel's mental status examination revealed plaintiff was cooperative, coherent and logical. (AR 136.)

25  Plaintiff claimed that she did not know how much she would have left after spending 50 cents of one

26  dollar and the similarity between an apple and orange.  (AR 136-137.)  Dr. Michiel found plaintiff's

27  mood was depressed and anxious and her affect was broad and appropriate.  (AR 137.)  Dr. Michiel

28  characterized plaintiff's thought process as goal-oriented.  (AR 137.)  Dr. Michiel diagnosed anxiety

1   disorder, not otherwise specified, and noted a 55-60 Global Assessment of Functioning ("GAF").  Dr.

2   Michiel opined that plaintiff "is able to maintain adequate attention and concentration," "to carry out one

3   or two step simple job instructions," and "to relate and interact appropriately with coworkers,

4   supervisors and the general public." (AR 137.)  According to Dr. Michiel, plaintiff is unable "to carry

5   out an extensive variety of technical and/or complex instructions." (AR 137.)

6               *Psychiatric Review Technique And Mental Residual Functional Capacity Assessment*

7               Archimedes Garcia, M.D. ("Dr. Garcia"), a psychiatrist, completed a February 22, 2002

8   Psychiatric Review Technique to note a medically determinable impairment of anxiety disorder, not

9   otherwise specified. (AR 144.) Dr. Garcia found plaintiff experienced mild restriction/difficulties of

10  activities of daily living, maintaining social functioning and maintaining concentration, persistence or

11  pace. (AR 149.)

12              Dr. Garcia completed a February 22, 2002 Mental Residual Function Capacity Assessment to

13  note that plaintiff is generally not significantly limited in understanding and memory, sustained

14  concentration and persistence, social interaction and adaptation. (AR 153-154.) Dr. Garcia concluded

15  that plaintiff is able to perform simple repetitive tasks on a sustained basis, relate to others and adapt.

16  (AR 155.)

17                          *Fresno County Department Of Mental Health*

18              Plaintiff treated with Fresno County Department of Mental Health.  According to a May 1, 2002

19  comprehensive assessment, plaintiff is preoccupied with body pain, distress, sadness, forgetfulness,

20  crying spells and hopelessness. (AR 285.) The assessment notes that in 1998, plaintiff's then 12-year-

21  old son was kidnaped for three hours to cause distress, worries, hopelessness and helplessness.  (AR

22  285.)  The assessment notes that in 1981, plaintiff left Laos for the United States.  (AR 286.)  The

23  assessment summarized that plaintiff has had difficulty to adapt to life in the United States and

24  complains of sadness, poor sleep, fatigue, low self-esteem, depressed feeling, crying spells, anger

25  outbursts two or three times a day, agitated mood, and suicidal wishes without a plan.  (AR 288.)

26  Plaintiff was assessed with major depressive disorder, severe, and a 50 GAF. (AR 283, 289.)

27              During 2002-2003, plaintiff attended Hmong support group meetings. (AR 240-289.)  At the

28  meetings, she reported "a lot of depressed feelings" from physical pains, including headache, back,

5

1   stomach and arm pain, sleeping difficulty from nightmares and physical pains, and appetite loss.  (AR

2   241, 245, 248, 250, 256, 259, 261-265, 267-276, 279, 280.)  Staff members noted plaintiff's acceptable

3   grooming and hygiene and good eye contact.  (AR 254-256, 258, 259, 261, 263, 265, 268, 269, 271-

4   279.)  On September 18, 2002, plaintiff noted that her functioning is "ok."  (AR 273.)  Plaintiff further

5   noted that she cannot cook "because of the depressed feelings and loss of concentration."  Plaintiff

6   helped to clean and cut food and reported she enjoyed the Hmong cooking day.  (AR 273.)  On October

7   2, 2002, plaintiff commented that she did not want to be in a job option program because she did not

8   understand it and "is afraid to get into the main stream system for training and educational training."

9   (AR 272.)  On October 16, 2002, plaintiff noted that she sometimes goes "shopping with her family to

10  take her mind off her problem and pains."  (AR 271.)  On October 28, 2002, plaintiff discussed with a

11  staff member "a discharge plan" since plaintiff "is functioning independently by herself."  (AR 270.)

12  On December 11, 2002, plaintiff reported she planned to spend Christmas and New Years with her

13  family and friends and to attend a New Years celebration.  (AR 265.)

14          During December 2002 and January 2003, plaintiff was provided information to increase her

15  sleep.  (AR 264-262.)  On January 22, 2003, plaintiff reported that she went on walks with her husband

16  and to stores to reduce depressed feeling.  (AR 261.)  On January 27, 2003, plaintiff was diagnosed with

17  major depressive disorder, single episode, severe, no psychosis.  (AR 260.)  On February 5, 2003,

18  plaintiff received recommendations for relaxation.  (AR 259.)  In spring 2003, plaintiff noted that her

19  medication did not help much for her depression.  (AR 248, 254-255.)  On July 9, 2003, plaintiff noted

20  no change in her depression since participating in rehabilitation group from a year.  (AR 243.)  Plaintiff

21  reported that she cannot complete chores and gives up after three to five minutes and that she drives but

22  does not grocery shop.  (AR 243.)  On July 10, 2003, plaintiff was advised to attend basic English and

23  job training classes.  (AR 241.)  On July 16, 2003, plaintiff participated in a bingo game.  (AR 240.)

24                                  ***Maximo A. Parayno, Jr., M.D., Treating Physician***

25          Plaintiff treated with Maximo A. Parayno, Jr., M.D. ("Dr. Parayno"), a psychiatrist.  Dr. Parayno

26  completed a June 20, 2003 Medical Assessment of Ability to Do Work-Related Activities (Mental) to

27  conclude that plaintiff: (1) has fair ability to follow work rules, relate to coworkers, deal with public,

28  interact with supervisors, understand, remember and carry out simple job instructions, and maintain

1  personal appearance; and (2) has poor ability to use judgment, deal with work stress, function

2  independently, maintain attention/concentration, understand, remember and carry out complex or

3  detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations,

4  and demonstrate reliability.  (AR 290-291, 295-296.)

5          Dr. Parayno completed a July 21, 2003 Complete Medical Report (Mental) to note clinical

6  findings of recurrent nightmares, flashbacks, intensive thoughts about trauma of war, depressive

7  symptoms, poor memory and concentration, and feelings of hopelessness and unworthiness.  (AR 293,

8  294.) Dr. Parayno diagnosed post traumatic stress disorder, depressive disorder, not otherwise specified,

9  peptic ulcer and hypertension.  (AR 293, 294.)  Dr. Parayno noted his treatment of medications,

10  including Paxil CR 25 mg.  (AR 293, 294.)  Dr. Parayno further noted plaintiff's fair response to

11  treatment and his fair to guarded prognosis.  (AR 293, 294.)

12                          ***Post-Hearing Psychological Evaluation***

13          After the ALJ's October 10, 2003 decision, plaintiff's counsel requested and obtained a July 29,

14  2004 psychological evaluation signed by Melissa Dearing, M.A. ("Ms. Dearing"), a psychological intern,

15  and Thomas Shaffer, Ph.D. ("Dr. Shaffer"), a supervising clinical psychologist.  (AR 300.)    The

16  evaluation notes that plaintiff has ten children then ranging from ages eight to 25.  (AR 300.)  As to

17  plaintiff's history, the evaluation notes that plaintiff, her husband and two children fled Laos and

18  experienced deaths of family members, including plaintiff's mother-in-law and her baby and plaintiff's

19  father.  (AR 300-301.)  Plaintiff reported that she was hit in the head with shrapnel and rendered

20  unconscious and that her family escaped to a Thai refugee camp where they lived for a year before

21  arriving in the United States in 1981.  (AR 301.)  Plaintiff complained of nightmares regarding the

22  escape, appetite loss, insomnia, self-loathing, anger, low energy, memory problems, dizziness, suicidal

23  ideation, a suicide attempt, stomach aches, chronic headaches and numb feet.  (AR 301.)

24          In their evaluation, Ms. Dearing/Dr. Shaffer noted that plaintiff's mood was "clearly depressed"

25  and that plaintiff "appeared to have slow, confused thoughts."  (AR 302.)  Ms. Dearing/Dr. Shaffer

26  diagnosed post-traumatic stress disorder, chronic, with delayed onset, and major depression, severe with

27  psychotic features, without interepisode recovery and assessed a 35 GAF.  (AR 303.) Ms. Dearing/Dr.

28  Shaffer commented that test results indicated that plaintiff "is severely impaired due to depression,

7

1    posttraumatic stress disorder, and possibly neurological damages" and that plaintiff's short-term memory

2    and visual-motor capacity are "severely impaired." (AR 303.) Ms. Dearing/Dr. Shaffer concluded that

3    plaintiff has been unable to work since August 30, 2001. (AR 303.)

4            Ms. Dearing/Dr. Shaffer completed a July 29, 2004 questionnaire, apparently prepared by

5    plaintiff's counsel, to note that plaintiff: (1) is extremely limited to interact with others and to retain

6    information; (2) showed poor ability to follow instructions; (3) is able to follow a one-step instruction;

7    (4) has virtually no ability to deal with the public; (5) has low frustration tolerance and mental dullness

8    to impair her concentration; (6) has attention and concentration limited to a few minutes; (7) lacks

9    mental stamina to work an eight-hour day; (8) has fair ability to follow work rules, maintain

10   attention/concentration and deal with work stresses; and (9) has poor ability to relate to coworkers, deal

11   with the public, use judgment in public, interact with supervisors, function independently, relate

12   predictably in social situations, and demonstrate reliability. (AR 305-306.)

13                                            *Medications*

14           Plaintiff's medications have included Paxil 20 and 37.5 mg, Cimetidine 800 mg, Mapad 500 mg,

15   Trazodone 50 mg and 100 mg, Zoloft 100 mg, Seroquel 25 mg, Tylenol 500 mg, Tagment 800 mg,

16   Pantidone 100 mg, Theragen .25 %, and Remeron Sol 45 mg. (AR 94, 128.)

17                            **Plaintiff's Activities And Testimony**[2]

18                                   *Reports And Questionnaires*

19           Plaintiff completed an undated Disability Report Adult to note that she is able to read, write and

20   speak limited, simple English and that her native language is Hmong. (AR 88.) Plaintiff claimed her

21   ability to work is limited by ulcer, back pain, depression, headache, inability to sleep, weakness and a

22   right ear problem to prevent her to bend, stand long and concentrate. (AR 89.) Plaintiff claimed

23   inability to work since March 10, 1997. (AR 89.) In 1997, plaintiff performed assembly work at a shop

24   and claimed that it is her exclusive work performed. (AR 90.) Plaintiff attended adult school during

25   1996-1997. (AR 95.) Plaintiff was pregnant 14 times, has nine living children, and claims to be sick,

26   weak depressed and unable to "concentrate in doing anything for life." (AR 96.)

27   _____

28           [2]     The Commissioner stipulates that the ALJ fairly and accurately summarized the testimony in his October 10, 2003 decision.

8

1    Plaintiff completed a September 28, 2001 Daily Activities Questionnaire to note that she lives

2  in a home with her family. (AR 110.)  On an average day, plaintiff does nothing, is depressed and stays

3  home. (AR 110.)  Plaintiff does not sleep well because her "mind thinks of things" and her body aches.

4  (AR 110.)  Plaintiff takes Trazodone 100 mg and Seroquel 25 mg for sleep. (AR 110.)  Plaintiff is able

5  to dress herself. (AR 110.)  Plaintiff's children clean. (AR 110.)  Standing or walking for long periods

6  causes plaintiff back pain. (AR 110.)  Plaintiff's children and husband generally prepare meals. (AR

7  111.)  Plaintiff grocery shops twice a month and needs help to carry the groceries and with "money

8  matters." (AR 111.)  Plaintiff's children and husband help with household chores because the chores

9  are too much for plaintiff. (AR 111.)  Plaintiff has no hobbies and neither watches television nor listens

10  to the radio. (AR 112, 113.)  Plaintiff is limited to reading and writing her name. (AR 112.)  Plaintiff

11  leaves her home once a week for church or a store. (AR 112, 113.)  She needs help to carry things from

12  the store. (AR 112.)  Plaintiff angers easily when others talk because she likes quiet. (AR 113.)

13  Plaintiff does not want to socialize. (AR 113.)  Plaintiff has difficulty concentrating, gets dizzy and is

14  forgetful. (AR 114.)  Plaintiff wants to work but is unable, is depressed and physically weak. (AR 114.)

15  Plaintiff attempted to work packaging candy but was unable to stand up eight hours at a time and was

16  laid off. (AR 114.)

17    Cher Yao Yang completed an October 3, 2001 Daily Activities Questionnaire (Third Party

18  Information) to note that plaintiff lives at home with her family. (AR 116.)  On a typical day, plaintiff

19  sits around, is depressed, and complains about her health condition and body aching. (AR 116.)

20  Plaintiff has sleeping difficulty from body pain and nightmares and requires sleep medication. (AR

21  117.)  Plaintiff sometimes is confused and withdrawn. (AR 117.)  Plaintiff's daughter assists with

22  cooking and meals. (AR 117.)  Plaintiff's husband and daughter do the shopping. (AR 117.)  Plaintiff's

23  children perform household cleaning. (AR 118.)  Plaintiff leaves her home only to attend church once

24  a week and for doctor appointments and support group sessions. (AR 118, 119.)  Plaintiff has a driver's

25  license and drives but when she is too depressed or confused, her husband drives. (AR 118.)  Plaintiff

26  is withdrawn, does not want to socialize and is scared of people. (AR 118.)  Plaintiff neither watches

27  television nor listens to the radio. (AR 119.)  Plaintiff has no patience with her family and angers easily.

28  (AR 119.)  Plaintiff has problems completing tasks and is forgetful. (AR 120.)  When plaintiff is angry,

1   she tries to hit her children but they run away.  (AR 120.)  Plaintiff is depressed and confused and

2   complains about her body pain.  (AR 121.)  Plaintiff sits around and does not understand what people

3   tell her.  (AR 121.)  Plaintiff lacks the ability to cope with her problems.  (AR 121.)

4          Plaintiff completed a March 22, 2002 Reconsideration Disability Report to claim her symptoms

5   had changed in that plaintiff is more depressed.  (AR 122.)  Since filing her claim, plaintiff experienced

6   major depression, back, abdominal, thumb and bone pain, and high blood pressure.  (AR 122.)

### *Plaintiff's ALJ Hearing Testimony*

8          Plaintiff testified at the August 12, 2003 ALJ hearing that plaintiff was born is Laos, has given

9   birth to ten children, five of whom live with her and whose ages at the time of the hearing ranged from

10  nine to 18.  (AR 314.)  Four of plaintiff's children went to college and one died shortly after birth.  (AR

11  314.)  Plaintiff knows neither when she was married nor her age at that time.  (AR 316.)

12         Plaintiff became a United States citizen in 1996 after passing a test translated from English to

13  Hmong.  (AR 318.)  Plaintiff attended school in Laos for one year.  (AR 318.)  Plaintiff is able to

14  understand "simple things" in English.  (AR 319.)  Plaintiff is able to understand when spoken to in

15  English but is unable to converse back.  (AR 319.)

16         Plaintiff has a driver's license but stopped driving two years prior to the hearing because of her

17  depression.  (AR 317, 331.)  With her depression, she forgot to stop at stop lights and signs.  (AR 317.)

18  Plaintiff thinks of her illness and forgets things.  (AR 318.)

19         Initially, plaintiff noted that she had not worked at any job during the past 15 years.  (AR 319.)

20  Plaintiff later corrected her testimony to note that she had worked on an assembly line and was paid

21  minimum wage.  (AR 320.)  Plaintiff needed to try the job to get welfare checks.  (AR 320.)  She was

22  unable to keep up with the job's heavy lifting and was fired.  (AR 320-321.)

23         Plaintiff claims she cannot help herself anymore and is a "sick person."  (AR 315.)  Plaintiff

24  experiences constant back pain which causes depression.  (AR 315.)  Plaintiff also experiences stomach

25  and shoulder pain and headaches.  (AR 321.)  Headaches blur plaintiff's vision to require her to sit still

26  for 30-60 minutes.  (AR 322.)  Plaintiff cannot sit at one place "too long," and sitting in one place too

27  long prevents plaintiff to sit or bend forward.  (AR 322.)  Plaintiff is able to sit in a chair for 30-60

28  minutes before needing to get up and walk.  (AR 322, 323.)  Plaintiff is able to stand on her feet for 10

minutes before needing to lie down. (AR 322.) A gallon of milk is the heaviest plaintiff can lift. (AR 322.) Plaintiff is able to lie face down for up to an hour. (AR 323.) Out of eight hours, plaintiff lies down about three hours. (AR 323.) Plaintiff feels better when she lies down. (AR 323.) Plaintiff lies down more than she sits during a normal day. (AR 324.) Plaintiff sits more than she stands during the day. (AR 324.)

Plaintiff experiences "fearness" when the phone rings because it reminds her of her son's kidnaping. Plaintiff's depression has worsen in the three years prior to the hearing, and she is unable to do things she is supposed to do, such as cooking and caring for her family. (AR 325.) Plaintiff cannot continue to help her family which causes her to feel more depressed. (AR 325.) Plaintiff's depression causes inability to sleep, and plaintiff experiences nightmares. (AR 325.) Plaintiff feels tired during the day time to require her to lie down. (AR 325.) Plaintiff is no longer able to shop, perform housework or attend her children's school conferences. (AR 325-326.) Plaintiff will not attend her daughter's high school graduation because she cannot sit too long. (AR 326.)

Plaintiff attends church services with her family every two or three weeks. (AR 327.) She leaves after one hour of the two-hour service. (AR 327.) Plaintiff does not attend each week because she cannot sit too long. (AR 327.) Initially, plaintiff states the church services are longer than her children's school conferences (AR 327) but later states the "[p]arent teach conferences are longer than church service because many people talk and it tends to be longer." (AR 328.) Plaintiff did not attend the most recent Hmong New Year celebration because plaintiff was unable to sit. (AR 328.)

Plaintiff treats with Dr. Parayno who provides medication to help plaintiff sleep and to numb her pain. (AR 328-329.) Plaintiff experiences no bad side effects from medication. (AR 329.) Plaintiff denied missing mental health group sessions although records revealed she missed many sessions. (AR 330.) Plaintiff later stated she missed sessions because of doctors' appointments. (AR 330.) Plaintiff claimed that she did not take her children to doctor's appointments during the past year and that her daughter took the children. (AR 330.)

Plaintiff does not grocery shop with her husband because he takes too much time to look around. (AR 331.) Plaintiff had grocery shopped with her husband but experienced low back pain. (AR 332.) Plaintiff walks around the block with her husband. (AR 331.)

1    Plaintiff gets "depressed to be around many people."  (AR 332.)

2                    ***Testimony of Vocational Expert Judith Najarien***

3    Vocational Expert Judith Najarien ("Ms. Najarien") testified at the August 12, 2003 ALJ hearing

4    that plaintiff's work at the candy factory was light and unskilled.  (AR 334.)  As a first hypothetical, the

5    ALJ asked Ms. Najarien to assume a person who: (1) is age 48; (2) is illiterate; (3) has plaintiff's past

6    relevant work experience; (4) has a combination severe impairment; (5) retains residual functional

7    capacity to lift/carry 100 pounds occasionally and 50 pounds frequently; (6) is able to stand, walk and

8    sit six to eight hours; (7) retains the ability to perform simple, repetitive tasks; (8) retains ability to

9    maintain attention, concentration, persistence and pace; (8) retains ability to relate and interact with

10   others but must have little contact with the general public; and (9) retains ability to adapt to usual

11   changes in work settings and to adhere to safety rules.  (AR 334-335.)  Ms. Najarien testified that a

12   person with such limitations is able to perform plaintiff's past relevant work.  (AR 335.)  As for other

13   jobs such person could perform, Ms. Najarien identified production assembler (19,926 jobs in

14   California), packing line worker (19,619 jobs in California), and hand washer (70,345 jobs in

15   California).

16   As a second hypothetical, the ALJ as Ms. Najarien to assume a person who: (1) has the same

17   vocation parameters of the person in the first hypothetical; (2) has a combination of severe impairments;

18   (3) has the residual functional capacity to lift/carry a gallon or approximately eight pounds; (4) retains

19   the ability to stand/walk less than four hours; (5) needs to lie down three or four times during an eight-

20   hour shift; (6) lacks the ability to understand, remember or carry out simple, repetitive tasks; (7) is

21   unable to relate to or interact with others; (8) is unable to maintain attention and concentration; (9) is

22   unable to maintain persistence and pace; and (9) is unable to adhere to safety rules.  (AR 336.)  Ms.

23   Najarien opined a person with such limitations could perform neither plaintiff's past relevant work or

24   any other job which exists in the national economy.  (AR 336.)

25   As a hypothetical, plaintiff's counsel asked Ms. Najarien to assume a person who: (1) has the

26   same vocational factors as in the ALJ's hypotheticals; (2) has a combination of severe impairments as

27   in the ALJ's hypotheticals; (3) is restricted to medium level work; and (4) has several mental restrictions

28   none of which alone would preclude work for an eight-hour day but which cause serious limitations to

12

use judgement dealing with work stress, function independently in a work setting, maintain concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (AR 337.)  Ms. Najarien opined that a person with such limitations would be able to perform the jobs which she identified and plaintiff's past relevant work.  (AR 338.)

### The ALJ's Findings

In his October 10, 2003 decision, the ALJ identified that primary issue as whether plaintiff is under a "disability" as defined in the Act.  (AR 17.)  In concluding that plaintiff had not met her burden to prove inability to perform past relevant work and is neither disabled nor entitled to SSI, the ALJ found:

1.   Plaintiff has post-traumatic stress disorder and depressive disorder which are severe but do not meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments).

2.   Plaintiff's allegations regarding her limitations are not credible.

3.   Plaintiff has the residual functional capacity to perform work without exertional limitations and has the mental capacity to perform simple repetitive tasks, maintain attention, concentration, persistence and pace, interact with and relate to others, with little contact with the general public, adapt to usual changes in work setting, and adhere to safety rules.

4.   Plaintiff's past relevant work as candy factory worker did not require performance of work-related activities precluded by her residual functional capacity.

5.   Plaintiff's impairments do not prevent her from performing her past relevant work.  (AR 22.)

### DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812

1   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

2   contrary to treating physician's findings).³   Substantial evidence is "more than a mere scintilla,"

3   *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

4   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such

5   evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

6   at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

7        The record as a whole must be considered, weighing both the evidence that supports and detracts

8   from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

9   substantial evidence to support the administrative finding, or if there is conflicting evidence that will

10  support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

11  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than

12  one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

13  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

14  Cir. 1999).

15       This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

16  is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

17  whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be

18  reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

19       Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete

20  and detailed objective medical reports of her condition from licensed medical professionals." *Meanel

21  v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

22  Plaintiff must furnish medical and other evidence about plaintiff's medical impairments. 20 C.F.R. §§

23  404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind

24  or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine

25  whether you are disabled or blind.  You are responsible for providing that evidence.")

26

27       ³      "The district court properly affirms the Commissioner's decision denying benefits if it is supported by
    substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th
28  Cir. 1997).

14

1    _____Here, plaintiff chiefly claims disability since March 10, 1997 due to ulcer, back pain, depression,

2    headaches and sleepiness.  (AR 76.)  As discussed below, this Court finds that the ALJ properly

3    evaluated the evidence and that his conclusion that plaintiff is not disabled is based on proper legal

4    standards and substantial evidence.

5    _____With these standards in mind, this Court turns to plaintiff's criticisms of the ALJ's October 10,

6    2003 decision.

7                                   **Evaluation Of The Mental Health Record**

8        Plaintiff claims the ALJ improperly evaluated the mental health record, relied on Dr. Stoltz'

9    opinion, and discounted Dr. Parayno's assessment. support .  The Commissioner responds that the ALJ

10   properly evaluated the evidence.  This Court will first address the physician opinions.

11       A treating physician's opinion is not conclusive as to a claimant's physical condition or the

12   ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

13   *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747,

14   751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[4]  An ALJ may reject a

15   treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in

16   form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751.

17   Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

18   specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.

19       The Ninth Circuit has further explained:

20            To reject the opinion of a treating physician which conflicts with that of an
         examining physician, the ALJ must "'make findings setting forth specific, legitimate
21       reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ
         can meet this burden by setting out a detailed and thorough summary of the facts and
22       conflicting clinical evidence, stating his interpretation thereof, and making findings." .
         . . The rule . . . does not apply, however, "when the nontreating physician relies on
23       independent clinical findings that differ from the findings of the treating physician." . .
         . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical
24       tests, it must be viewed as substantial evidence . . .'"

25   *Magallanes*, 881 F.2d at 751(citations omitted.)

26   _____

27       [4]       A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an
     administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The Commissioner has final responsibility
28   to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.

                                                            15

1    "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

2  testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9ᵗʰ Cir. 1998).

3  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

4  specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

5    After reviewing the medical evidence and plaintiff's symptoms, the ALJ explained his proper

6  rejection of Dr. Parayno's assessment and acceptance of Dr. Michiel's opinion:

7          In evaluating the evidence about the claimant's mental impairments, substantial weight
          is given to the consultative psychiatric evaluation, and to the examiner's conclusion that
8          the claimant is able to perform one- and two-step tasks.  Little weight is given to treating
          physician Parayno's statement that the claimant is unable to withstand stress, maintain
9          concentration, or demonstrate reliability.   His assessment is not supported by
          examination findings, but relies on the claimant's subjective complaints, and is further
10         contradicted by the consultative psychiatric examination and by the Mental Health
          counseling record.  The latter shows that the claimant had ongoing symptoms of
11         depression and anxiety, but was able to shop, enjoy[]outings, and exercise with her
          husband, almost a different person from the woman depicted in Dr. Parayno's report.  In
12         reaching this conclusion regarding the claimant's residual functional capacity, the
          Administrative Law Judge has considered the claimant's subjective complaints.
13         However, they are not supported by the medical evidence and are not entirely credible
          when evaluated under Social Security Ruling 96-7p.  (AR 20-21.)

14

15    Dr. Parayno completed June 20, 2003 and July 21, 20003 reports to note that plaintiff has fair

16  and poor abilities in various mental areas related to work. (AR 290-291, 295-296.) Dr. Parayno noted

17  his treatment with medication, including a moderate Paxil dosage. (AR 293, 294.) To discredit Dr.

18  Parayno, the ALJ properly noted that Dr. Parayno's assessment is unsupported by examination findings.

19  An  ALJ may discredit a treating physician's opinion unsupported by the record as a whole or by

20  objective medical findings. *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195

21  (9ᵗʰ Cir. 2004); *Rollins v. Massanari*, 261 F.3d 853, 856 (9ᵗʰ Cir. 2001) (treatment notes "are not the sort

22  of description and recommendations one would expect to accompany a finding that [claimant] was

23  totally disabled under the Act.") The ALJ properly pointed to Dr. Parayno's clear error in relying on

24  plaintiff's subjective complaints. An ALJ may reject a treating physician's report based on a claimant's

25  exaggerated claims.  *See, e.g., Sandgathe*, 108 F.3d at 980.  A physician's opinion of disability

26  "premised to a large extent upon claimant's own accounts of his symptoms and limitations" may be

27  disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605

28  (9ᵗʰ Cir. 1989) (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433-434 (9ᵗʰ Cir.

16

1  1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("no physician has been able to find a link

2  between [claimant's] complaints and known medical pathologies").

3        As noted by the Commissioner, Dr. Parayno's assessment conflicted with Dr. Michiel's more

4  detailed, better supported opinion.  Dr. Michiel found plaintiff cooperative, coherent and logical and

5  characterized her thought process as goal-oriented.  (AR 136, 137.) Dr. Michiel opined that plaintiff "is

6  able to maintain adequate attention and concentration," "to carry out one or two step simple job

7  instructions," and "to relate and interact appropriately with coworkers, supervisors and the general

8  public." (AR 137.) Dr. Michiel's consultative opinion is substantial evidence in that it is consistent with

9  other independent evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  "Where the

10  opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is

11  based on independent clinical findings that differ from those of the treating physician, the opinion of the

12  nontreating source may itself be substantial evidence; it is then the province of the ALJ to resolve the

13  conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ properly pointed to portions

14  of group therapy notes to undermine Dr. Parayno's assessment.  Plaintiff fails to demonstrate ALJ error

15  in resolution of the conflict between Dr. Parayno's assessment and Dr. Michiel's opinion.

16        Plaintiff suggests that the ALJ failed to adhere to his duty "to develop the mental health record

17  fully." "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

18  or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*,

19  276 F.3d 453, 460 (9th Cir. 2001).  There is no suggestion of an ambiguous or inadequate record.  At the

20  August 12, 2003 ALJ hearing, plaintiff's counsel was given the opportunity to add more medical

21  evidence and presented records for admission.  (AR 312-313.) The record is silent of a request for more

22  evidence.  Plaintiff fails to demonstrate grounds to further develop the record.

23        Plaintiff criticizes the ALJ's comments regarding plaintiff group therapy sessions. Such criticism

24  is unfounded given the absence of a disability opinion by a therapist and the group sessions' assistance

25  to return to work.  (AR 241, 245, 248, 272.)

26        Moreover, this Court is not unmindful of the post-ALJ hearing psychological evaluation which

27  the Appeals Council characterized as "new information . . . about a later time" which does not affect the

28  decision whether plaintiff was disabled beginning or before the ALJ's October 10, 2003 decision.  (AR

1   6.) Plaintiff fails to justify reliance on the evaluation which her counsel sought after the ALJ's decision.

2                               **Listings Of Impairments**

3          Plaintiff argues that "voluminous treatment records" support disability under Listing 12.04

4   (Affective Disorders) or 12.06 (Anxiety Related Disorders) of the Listing of Impairments.   The

5   Commissioner responds that plaintiff failed to "even cite[] the requirements of the Listings she claims

6   she met."

7          The SSA regulations provide: "If you do not have any impairment or combination of impairments

8   which significantly limits your physical or mental ability to do basic work activities, we will find that

9   you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. §§ 404.1520(c),

10  416.920(c). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including

11  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as

12  "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1521(b)(1),

13  (3), 416.921(b)(1), (3).  At step two of the five-step disability analysis, "the ALJ must consider the

14  combined effect of all of the claimant's impairments on her ability to function, and without regard to

15  whether each alone was sufficiently severe."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

16  Such inquiry "is a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at

17  1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 2297-2298 (1987)).

18         The purpose of the Listing of Impairments is to describe impairments "severe enough to prevent

19  a person from doing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting

20  Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).  If

21  a claimant meets or equals a listed impairment, he/she is disabled.  *Tackett*, 180 F.3d at 1099.

22         The United States Supreme Court has explained application of the Listing of Impairments:

23                 The listings . . . are descriptions of various physical and mental illnesses and
            abnormalities, most of which are categorized by the body system they affect.  Each
24          impairment is defined in terms of several specific medical signs, symptoms, or laboratory
            test results.  For a claimant to show that his impairment matches a listing, it must meet
25          *all* of the specified medical criteria.  An impairment that manifests only some of those
            criteria, no matter how severely, does not qualify. . . .  "The level of severity in any
26          particular listing section is depicted by the *given set* of findings and not by the degree of
            severity of any single medical finding – no matter to what extent that finding may exceed
27          the listed value."

28                 . . .

                                             18

The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

*Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885 (1990) (italics in original; citations omitted).

"While the Listing of Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the **findings** shown in the Listing of that impairment.'" *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)); *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985)) (bold added).

To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099. Medical equivalence must be based on medical findings in the evidence supported by medically acceptable clinical and laboratory diagnostic techniques. *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§ 404.1526(b) and 416.926(b).

Plaintiff points to insufficient medical signs, symptoms or laboratory test results to demonstrate that her alleged impairments meet or equal Listing 12.04 or 12.06. Plaintiff points to no findings of an impairment of Listing 12.04 or 12.06. Plaintiff comes no where close to meeting her burden that her condition meets or equals a Listing of Impairments.

**Plaintiff's Credibility**

Plaintiff argues that "the ALJ misreported and improperly discredited the testimony of Plaintiff." The Commissioner disagrees and points to support for the ALJ's credibility evaluation.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

1995).  "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* S.S.R. 96-7p.[5]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

---

[5]     Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1)  claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1       2.       Precipitating and aggravating factors (e.g., movement, activity, environmental

2               conditions);

3       3.       Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4       4.       Treatment, other than medication, for relief of pain;

5       5.       Functional restrictions;

6       6.       Claimant's daily activities;

7       7.       Unexplained, or inadequately explained, failure to seek treatment or to follow up a

8               prescribed course of treatment; and

9       8.       Ordinary techniques to test a claimant's credibility.

10  *Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

11       The ALJ thoroughly detailed the medical evidence and plaintiff's claims and testimony to

12  address plaintiff's credibility:

13       Weighing all relevant factors, the Administrative Law Judge finds that the claimant's
          impairments are not as limiting as alleged. Nothing in the treating or examining records
14      supports the claimant's testimony that she has difficulty sitting or standing for longer
          than 10-30 minutes; nowhere does the record demonstrate that she has a musculoskeletal
15      impairment or observable physical restrictions. Further, the consultative examiner's
          observations that the claimant did not give good effort to testing and attempted to fake
16      a limp lessen her credibility about her physical symptoms and limitations (Exhibit B-1F;
          B-2F; B-7F, pp. 14, 22, 34). The Mental Health records show that the claimant enjoyed
17      participating in a cooking class, and was able to learn the mechanics of playing bingo,
          which involved matching numbers (called in Hmong), to written numbers. The claimant,
18      with some assistance, was able to learn how to do this, and play the game (Exhibit B-7F,
          pp. 1, 34). This suggests that the claimant has the capacity to understand, remember, and
19      carry out simple work rules, related to unskilled work. The Mental Health record also
          documents that the claimant was not motivated to seek improvement, and refused
20      attempts to mainstream her for education and training (Exhibit B-7F, pp. 4, 33). The
          claimant's statement that she sends her minor to a medical appointment, accompanied
21      only by an 18-year old, is not credible. (AR 21-22.)

22       Plaintiff has failed to demonstrate error in the ALJ's credibility determination. Plaintiff points

23  to no arbitrary discredit of plaintiff's credibility. The ALJ noted that plaintiff originally claimed she had

24  not worked during the past 15 years but corrected her testimony after the ALJ pointed out the

25  inconsistency in plaintiff's work background report. (AR 319.) The ALJ correctly noted the absence

26  of medical evidence to substantiate her claims of severe limitations. Medical evidence is "a relevant

27  factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

28  261 F.3d 853, 857 (9th Cir. 2001); *see Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (the medical

1   evidence suffices as "specific, clear, and convincing reasons" to discredit pain claims); *Roberts v.*

2   *Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356 (1996) (claimant

3   has the burden to prove she has a qualified impairment that meets the 12-month duration requirement).

4   Plaintiff's "self-serving statements may be disregarded to the extent they are unsupported by objective

5   findings." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

6          The ALJ appropriately pointed to Dr. Stoltz' comment that plaintiff "had poor effort during

7   musculoskeletal testing and motor strength testing." (AR 131.) *See Thomas v. Barnhart*, 278 F.3d 947,

8   959 (9th Cir. 2002) (efforts to impede accurate testing of limitations support ALJ determination as to lack

9   of credibility). As the ALJ noted, Dr. Stoltz observed plaintiff's odd, hesitant gait when she examined

10  the examining room and later normal ambulation in the hallway. (AR 133.) Dr. Michiel observed that

11  plaintiff's posture and gait were normal.  (AR 135.)  Progress notes also pointed to plaintiff's

12  unexplained resistence "to get into the main stream system for training and educational training." (AR

13  272.)

14         The ALJ correctly pointed to the inconsistencies in plaintiff daily living activities and claimed

15  limitations.  The record reveals that plaintiff grocery shops, attends church, has a driver's license and

16  drives, and walks with her husband. (AR 111-113, 118-119, 261, 327, 331.)  Plaintiff participated and

17  enjoyed a Hmong cooking day during a group session to contradict her claims of inability to cook. (AR

18  273.) Plaintiff's activities are consistent with ability to understand remember and perform simple work

19  rules.

20         There are additional inconsistencies to discredit plaintiff.  Plaintiff testified inconsistently

21  regarding parent teacher conferences in comparison to church services.  (AR 327.)  Plaintiff denied

22  missing group sessions although records reveal that she missed many sessions.  (AR 330.)  Plaintiff's

23  comments that she does not grocery shop with her husband because he takes too long are inconsistent

24  with her recorded statements that she shopped and walked with her husband to reduce depression.  (AR

25  261, 271, 331.)   Progress notes reflect plaintiff planned to attend a New Year celebration despite her

26  claimed preference for quiet. (AR 113, 265.) Plaintiff's frequent church attendance is inconsistent with

27  her claim that she does not socialize. (AR 113, 118.) Plaintiff's claim that her daughter, not plaintiff,

28  took younger children to doctor's appointment is dubious. (AR 330.) Lastly, plaintiff noted no bad side

1    effects from medication.  (AR 329.)

2    **ALJ Bias**

3    In her opening papers, plaintiff claimed "there is actual prejudice in this case" although "there
4    is not specific bias."  In her reply papers, plaintiff "withdraws the general bias allegation, because it has
5    since been determined that there is insufficient ability in the Administrative system to compel such
6    proof."  As such, this Court construes plaintiff's reply papers to abandon her ALJ bias claim so that this
7    Court need not address its merits.

8    **CONCLUSION AND RECOMMENDATION**

9    For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ
10   properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported
11   by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this
12   Court RECOMMENDS to:

13   1.    DENY plaintiff's request to reverse the Commissioner's decision denying plaintiff SSI
14         or to remand for further proceedings; and

15   2.    DIRECT the Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart,
16         Commissioner of Social Security, and against plaintiff Martha Yang.

17   These findings and recommendations are submitted to the district judge assigned to this action,
18   pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than November 22,
19   2005, any party may file written objections to these findings and recommendations with the Court and
20   serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local
21   Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and
22   Recommendations."  Responses to objections shall be filed and served no later than December 5, 2005
23   and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be
24   served on the magistrate judge.  The district judge will review the magistrate judge's findings and
25   recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file
26   objections within the specified time may waive the right to appeal the district judge's order.  *Martinez*
27   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

28   IT IS SO ORDERED.

23

1  **Dated:**      **November 7, 2005**                    /s/ Lawrence J. O'Neill
   66h44d                                      UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28